## KEIPER ET UX. *v.* KLEIN ET AL.

EASEMENT. — *Prescriptive Right to Ancient Windows.* — The doctrine of pre-scriptive right to ancient windows was never received or in force as a part of the common law in America.

SAME.—*Appurtenance and Hereditament.*—A conveyance of land upon which is a building depending for its light and air on windows therein, which over-look adjoining land of the grantor, does not include any right of light and air through such windows, unless expressly granted thereby; such right does not pass as an appurtenance or hereditament, and in the absence of such express grant, the owner of such adjoining land may build thereon and thereby totally obstruct said windows.

DEED.—*Short Form.*— *Covenants.* — A deed executed according to the short, statutory form (1 G. & H. 260, sec. 12) conveys the land, "with the appurtenances and hereditaments," to the grantee, "his heirs and assigns," with covenants of seisin and warranty, as fully as if these words, and the full covenants were written in the deed.

From the Tippecanoe Civil Circuit Court.

*R. C. & W. B. Gregory,* for appellants.

*J. M. LaRue* and *S. E. Ball,* for appellees.

BIDDLE, C. J. — John Taylor was the owner in fee of lot forty-five in the city of Lafayette. It fronted north on Main street, and east on Third. He erected six store-rooms upon

it, as per a diagram in the record. Those marked D, E, F, G, fronted Third street, running back seventy-three feet, G being upon the corner of said streets. The building marked A fronted Main street, running back fifty-five feet; but this property includes still eleven feet south of the building, a vacant space marked B.

It is alleged that the plaintiff Mary Ann Keiper is the owner of the building A and the strip B; and that David A. Klein is the owner of store-room D, running back to the party wall dividing it from the strip B, and the building A. Both parties derive title from John Taylor; the complaint, however, does not inform us which of the two is the older title; but counsel on both sides, in their briefs, assume that the conveyance to Klein was made before Mary Ann received her title. We shall therefore treat Klein's as the senior title, and Mary Ann's as the junior. A portion of store-room D, at the west end, was constructed only one story high, with a sky-light in the roof; afterwards Taylor, before he conveyed to Klein, cut a window in the west end, which overlooks, and derives its light and air from, the vacant space B. The right to so derive the light and air is claimed by Klein, who desires to continue it; the right is denied by Mary Ann, who is desirous to extend her building south, and thus occupy space B, and consequently close the window in the west end of Klein's store-room D. Hence this suit is brought, to clear off the cloud created by the claim of Klein, which, as it is alleged, hangs over the property A and B, and to quiet the title in Mary Ann.

The complaint contains three paragraphs. Separate demurrers were filed by the defendants to each one, for the alleged want of facts, and for a misjoinder of parties defendants. The plaintiffs withdrew the third paragraph, leaving only the first and second to be considered, to which the court sustained the demurrers, and rendered judgment for the appellees. Exception and appeal were properly taken.

We do not particularly state the complaint, because we think if the principle contended for by the appellants is with

them, the facts are sufficiently alleged to bring the case within the law; if the law is against them, of course the complaint must be held insufficient, whatever it may allege. Nor do we see, according to the allegations, any misjoinder of parties defendants.

The deed from Taylor to Klein, for store-room D, complies with the statutory form, but does not contain the words "appurtenances" and "hereditaments," or either of them. It is contended by the appellants, that the deed, in the absence of these words, does not carry the easement of light and air with the title, but conveys only the actual land.

We are of the opinion, however, that our statutory deed was intended, in a short and convenient form, to take the place of the longer and more formal common-law deed, and convey the land, "with the appurtenances and hereditaments" to the grantee, "his heirs and assigns," with covenants of seisin and warranty, as fully as if these words and the full covenants were written in the deed.

It has never been necessary for us to fully decide this point before, but there are several decisions of this court going so far in that direction as to warrant us in giving this construction to the short form of deed authorized by statute and now so generally in use. 1 G. & H. 260, sec. 12; *Neilson* v. *Lagow*, 4 Ind. 607; *Carver* v. *Louthain*, 38 Ind. 530; *Coleman* v. *Lyman*, 42 Ind. 289.

The main question in the case is: Does the deed of John Taylor convey to David A. Klein, with store-room D, the easement of light and air to his west window, over and along space B, owned by Mary Ann Keiper?

The English decisions are not uniform upon this subject, nor always consistent with themselves. The same may be said of American decisions; yet there is a manifest difference between the two lines of authority. The English doctrine of prescriptive right to ancient windows was never received in America; indeed, it was sometimes stoutly denied in England, as early as the reign of Elizabeth (*Bury* v. *Pope*, 1 Cro. Eliz. 118), and under Charles II. (*Palmer* v.

*Fletcher*, 1 Lev. 122). It was always modified by the custom of London, and more recently by the act of William IV., c. 71, s. 3, and the tendency of English decisions.

In America, while the common law as a system was adopted generally, yet such parts of it as were inconsistent with our institutions or not adapted to the condition of the country were never in force.

The question before us has never been settled in this State. In New York (*Myers* v. *Gemmel*, 10 Barb. 537), it was held, where an owner of two adjoining lots in the city of New York, upon one of which was a building deriving its light and air over and through an open space in the rear of the other lot, into and over which the windows of the building opened and looked, leased the building and lot upon which it was erected for a term of years, with its appurtenances, without reserving the right to build on such other lot, or stop or darken the windows of the building leased, and afterwards built a house, covering the whole open space of the other lot, darkening the windows and excluding the light and air from the tenants occupying the building leased, that such an act was not in derogation of his own grant. This case is remarkably analogous to the one we are considering, except that it was a conveyance by lease, instead of bargain and sale, and we cannot perceive that such a distinction can make any difference in principle between the two cases. And similar to this case, in principle, is *Johnson* v. *Jordan*, 2 Met. 234, wherein it was held to require a user, adverse, peaceable, continued, and uninterrupted, during a period of twenty years, to maintain the easement of a drain through an adjoining lot, unless it was expressly granted in the deed.

In *Collier* v. *Pierce*, 7 Gray, 18, it was held that a general deed did not, by an implied grant, convey a right to light and air across an adjoining lot, where the vendor owned both lots at the time the conveyance was made.

It is claimed, however, by the appellees, that this case is distinguishable from the others cited, by the fact that both

lots were sold at auction on the same day; but the court deciding the case makes no such distinction, and we can see no difference between a public and private sale, if made by the vendor, as affecting the construction of the conveyance after it is made.

In Pennsylvania, it is held, that in the sale of a house and lot, no easement for light and air can be implied from the character of the improvements on the lot sold and the adjoining lot. *Haverstick* v. *Sipe*, 33 Penn. St. 368. The case of *Morrison* v. *Marquardt*, 24 Iowa, 35, is to the same effect.

DILLON, C. J., in delivering the opinion of the court, says:

"We have found no case, although we have directed particular attention to the point, in which an implied grant of light and air has been holden to exist when the vendor, at the time of the sale of the first parcel, laid out a space or passage between it and the portion of the heritage or estate retained by him."

In Ohio (*Mullen* v. *Stricker*, 19 Ohio St. 135), it is held, that "where the owner of two adjacent lots conveys one of them, no grant or reservation of an easement for light and air will be implied merely from the nature or use of the structures existing upon the lots at or prior to the time of the conveyance."

These are all modern and well-considered cases, holding in review the entire English and American doctrine upon the subject.

The case of *Swansborough* v. *Coventry*, 9 Bing. 305, would seem to militate against the above views, but it is distinguishable from the cases cited, in the language of the deed, which expressly conveyed the land, "with all the lights, easements, rights, privileges," etc.; and the decision was placed upon the ground of an express, not an implied, grant.

The ruling in the case of *United States* v. *Appleton*, 1 Sumner, 492, would also seem to be against the appellants; but, in that case, the easement was the right to swing a door above a piazza which extended over the adjoining property,

a thing palpable to be seen and fully known to the vendee at the time the purchase was made.

Justice STORY, in pronouncing the opinion, distinguishes it from an impalpable grant by saying:

" Here, the side-door in question was in actual use, as an appurtenance *de facto*, at the time of the grant."

There are *dicta* in *White* v. *Bass*, a modern case in the court of exchequer (7 H. & N. 722), which support the old English rule, but the case differs in its premises from the one we are considering, in this: the ground, over which the easement of light and air was claimed, was conveyed before the house, to which the easement was alleged to belong, was sold. Upon this ground the court denied the remedy for obstructing the easement.

The appellees rely upon *Bushnell* v. *Proprietors of Ore Bed*, 31 Conn. 150. In this case, the plaintiff had conveyed to the defendants the right, in washing their ore upon a small stream that ran through his land, to discharge dirt upon his " meadow lot," lying below, upon the same stream. A great quantity of dirt accumulated on the meadow lot, filling the bed of the stream, and raising the lot above the level of the adjoining land, so that the dirt washed upon the lot spread and was carried upon the plaintiff's pasture-land adjoining. It was held that the defendants were not liable for any damages to the pasture-land, resulting naturally from the discharge of dirt on the meadow lot. While there is a *dictum* of the judge delivering the opinion in the case which seems to support the appellees' views, we cannot perceive that the decision at all fortifies his position. It was a case where the plaintiff sued for the disturbance of a right he had expressly conveyed away, and is not analogous in principle to the case under consideration.

The only case that we have been able to find, which fully supports the views of the appellees, is *James* v. *Jenkins*, 24 Md 1; but it seems to stand antagonistic to the current of

American decisions. As at present advised, we cannot approve it.

In the course of the examination of this question we have consulted many decisions, some of the most apt of which, as throwing collateral light upon the subject, we cite for the convenience of the profession: *William Aldred's Case,* 9 Coke, 57; *Whalley* v. *Tompson,* 1 B. & P. 371; *Moore* v. *Rawson,* 3 B. & C. 332; *Grant* v. *Chase,* 17 Mass. 443; *Parker* v. *Foote,* 19 Wend. 309; *Canham* v. *Fisk,* 2 Tyrw. 155; *Symmes* v. *Drew,* 21 Pick. 278; *Harbidge* v. *Warwick,* 3 Exch. 552; *Stokoe* v. *Singers,* 8 Ellis & B. 31; *Blanchard* v. *Bridges,* 4 A. & E. 176; *Ward* v. *Neal,* 37 Ala. 500; *Moore* v. *Sinks,* 2 Ind. 257; *Postlethwaite* v. *Payne,* 8 Ind. 104; *Wickersham* v. *Bills,* 8 Ind. 387; *Snowden* v. *Wilas,* 19 Ind. 10; *Stevens* v. *Benson,* 19 Ind. 367. And the student will find both the English and American doctrine on the subject fully discussed and compared, and many authorities cited, in Washb. Easm. 489–509; *Clawson* v. *Primrose,* American Law Register, January, 1876, p. 6, and note.

It may be observed that many of the decisions we have cited have reference to easements of ways or drains, or other palpable objects, which may be seen or handled, as well as those of air and light; and, as far as we are aware, there is no announced distinction in law between these two classes of easements; yet in the nature of things they are different. Air exists at all times and everywhere around the surface of the earth; light comes with the day, and remains wherever the day is. There can be no absolute property in the air or light. There is not in the range of the books, or in legal lore, a definition of property which will include them. They are neither appurtenances nor hereditaments; they appertain to nothing and inhere in no substance, except themselves, and are bound to no place. An incorporeal hereditament, the most ideal of all objects of property, while it is not a thing corporeal itself, must issue out of, be annexed to, or exercised within, something that is corporeal, and in most instances is bound to place. Neither light nor air

belongs to this class of property. A purchaser of a house, store-room or building of any kind, can discover by observation a way, passage, drain, conduit, pit, sink, or any other of that class of easements, and thus be put upon his guard; but as to air, which is everywhere, and light that shines upon all, which are independent of all fixed objects or other corporeal substances, there is no palpable guide to direct the observer where they exist; besides, air and light may be obtained everywhere, and in various ways, within the compass of the land itself; they are, therefore, not necessarily dependent upon the rights of others for their enjoyment. How far this distinction between these two classes of easements has modified or may modify the rules which govern them, we cannot pretend to say; but that the distinction exists in nature, and cannot be abrogated by law, admits of no doubt.

It is a fundamental maxim that the title to land extends down to the center of earth, and up to the heavens, within the lines of gravitation; and land being the foundation and source of all other property, it would seem that its owner ought not to be hampered or embarrassed in its legitimate use by anything so impalpable and fleeting as air and light, in which no exclusive property can be held, and which belong in common right to all living things and may be had by all at all times and in all places. It has long been thought and felt that the old English rule governing easements of air and light is too strict, and not adapted to the conditions of this country, where land is bought and sold almost as freely as merchandise, unhampered by entails, and where progress, change and improvement are in full march. A line of decisions under such law would palsy enterprise, cripple industry, and check advancement; and the effect would be to dampen the spirits and shackle the energies of a free people. Rights and duties should be plain and fair, and the field of enterprise open and clear for all.

We are of opinion that the court erred in sustaining the

demurrers to the second and third paragraphs of the complaint.

The judgment is reversed; cause remanded, with instructions to overrule the demurrers, and for further proceedings.